UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

SHANNON BITZER,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )        No.:   3:25-CV-337-TAV-DCP
                                         )
TEGNA, INC., *et al.*,                   )
                                         )
            Defendants.                  )

## MEMORANDUM OPINION

This civil matter is before the Court on WBIR-TV, LLC ("WBIR") and Tegna, Inc.'s ("Tegna") motion to dismiss [Doc. 8].  Plaintiff responded [Doc. 10], and WBIR and Tegna replied [Doc. 11].  Accordingly, this matter is now ripe for review.  *See* E.D. Tenn. L. R. 7.1(a).  For the reasons explained below, the Court will **GRANT** the motion to dismiss [Doc. 8], and this case will be **DISMISSED.**

## I.      Background

This action arises from defendants' reporting and publication of an article that allegedly defamed plaintiff [*See* Doc. 1-1].  In his amended complaint, plaintiff alleges that on January 6, 2021, he engaged in protected speech at an "event" at the United States' Capitol in Washington, D.C., "without committing violence, injury, or property damage" [Doc. 1-1, p. 16].  Plaintiff later faced misdemeanor charges related to January 6, 2021, which "escalated to felonies after [p]laintiff declined to cooperate with authorities" [*Id.* at

17].  Plaintiff alleges that he was "acquitted"[1] of all charges on February 17, 2025, in the United States District Court for the District of Columbia (the "D.C. District Court"), "with no convictions, nor evidence of assault, and no charge of insurrection or seditious conspiracy ever leveled against [p]laintiff" [*Id.*].

Plaintiff alleges that on August 5, 2024, defendants published an article falsely claiming that plaintiff faced "January 6 Insurrection Charges," which he contends implied he was "accused of a grave, treasonous offense akin to seditious conspiracy under 18 U.S.C. § 2384—an accusation wholly absent from [p]laintiff's record" [*Id.*].  Plaintiff states that the article used "selective still images" to falsely portray plaintiff as a "violent participant" in the events of January 6, 2021, while ignoring publicly available United States Capitol security footage showing that plaintiff chanted peacefully and "gesturally displaced a stanchion" [*Id.*].  Additionally, plaintiff maintains that his public "acquittal records" confirm "no convictions, and no insurrection charges, rendering [d]efendants' portrayal patently false" [*Id.*].  Plaintiff also alleges that defendants acted with actual malice, knowing the portrayal was false or with reckless disregard for the truth [*Id.*].  He submits that defendants "had access to Capitol footage and acquittal records but chose misleading images and the inflammatory 'insurrection' label, demonstrating a deliberate intent to harm [p]laintiff's reputation" [*Id.*].

---

[1] The criminal records reflect that plaintiff was not "acquitted," but rather, the government moved to dismiss the charges under Federal Rule of Criminal Procedure 48(a), in light of a presidential pardon [D.D.C. CM/ECF, Case No. 1:24-cr-316, Doc. 35].

2

As a result, plaintiff filed this action for defamation in the Knox County Circuit Court on June 9, 2025 [*Id.* at 2–7]. On June 16, 2025, plaintiff filed an amended complaint, in which he seeks compensatory damages reflecting: (1) economic loss paid to plaintiff's brother to assume plaintiff's role in a hemp business to protect the business from plaintiff's "stigmatized identity"; (2) loss of personal salary; (3) diminished valuation and lost opportunities of plaintiff's hemp business; (4) lost time for therapy sessions related to post-traumatic stress disorder; (5) reputational damage; and (6) damages associated with emotional distress [*Id.* at 14–21]. Plaintiff also seeks: (1) punitive damages; (2) an injunction mandating retraction and public correction of the article; and (3) costs/fees [*Id.* at 20–21]. WBIR and Tegna filed a notice of removal to this Court on July 15, 2025 [Doc. 1-2]. The Court subsequently denied plaintiff's motion to remand [Docs. 7, 14]. The Court now turns to WBIR and Tegna's pending motion to dismiss plaintiff's amended complaint [Doc. 8].

## II.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2) which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

3

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).  However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Given plaintiff's *pro se* status, the Court notes that federal courts have a duty to "liberally construe the briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel." *Bouyer v. Simon*, 22 F. App'x 611, 612 (6th Cir. 2001).  At the same time, however, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996).  As such, courts have not typically "been willing to abrogate basic pleading essentials in *pro se* suits."  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## III.  Analysis

### A.  Attachments to Motion to Dismiss

In support of their motion to dismiss, WBIR and Tegna attach the following exhibits: (1) the published news article at issue [Doc. 8-1]; (2) the criminal docket showing plaintiff's charges in the D.C. District Court [Doc. 8-2]; (3) the criminal complaint filed against plaintiff in the D.C. District Court [Doc. 8-3]; and the indictment charging plaintiff with offenses related to January 6 [Doc. 8-4].  They also attach a side-by-side comparison of the news article and the criminal proceedings as an exhibit to their memorandum in support of the motion to dismiss [Doc. 9-1].

Generally, courts may consider only the factual allegations in the pleadings when deciding a Rule 12(b)(6) motion to dismiss.  *Tebault v. United States*, 778 F. Supp. 3d 912, 917 (W.D. Ky. 2025) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)).  However, the Sixth Circuit has held that "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss *so long as they are referred to in the Complaint and are central to the claims contained therein*."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (emphasis added).  Additionally, a "court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice."  *Wyser-Pratte Mgmt. Co., Inc. v. Telxon*

5

*Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citation omitted). Moreover, "in a defamation action in which the truth is asserted as a defense, a court may take judicial notice of the plaintiff's convictions." *Ali v. Moore*, 984 S.W.2d 224, 229 (Tenn. Ct. App. 1998).

Given that the news article [Doc. 8-1] is referenced in and relied upon in the amended complaint, and, indeed, is the central fact at issue in the amended complaint, the Court finds it appropriate to consider the news article in the context of this Rule 12(b)(6) motion without converting the motion to one for summary judgment. *See Bassett*, 528 F.3d at 430; *Wyser-Pratte Mgmt.*, 413 F.3d at 560. Further, the records of plaintiff's criminal case in the D.C. District Court [Docs. 8-2, 8-3, 8-4] are referenced in the amended complaint, are integral to the claims therein, are public records, and are also relevant to the defendants' substantial truth defense, and therefore, are appropriately considered in the context of this Rule 12(b)(6) motion. *See id.*; *see also Ali*, 984 S.W.2d at 229. In fact, given the critical nature of the criminal proceeding to the amended complaint's allegations, the Court finds it appropriate to take judicial notice of the entire criminal proceeding in the D.C. District Court, that is, Case Number 1:24-CR-316. *See Lucaj v. Dedvukaj*, 13 F. Supp. 3d 753, 756 n.4 ("'A federal court may take judicial notice of the proceedings in other courts of record'" (alterations omitted) (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980)). However, the Court declines to consider the

6

side-by-side comparison as it was neither mentioned in the amended complaint nor is it a public record [Doc. 9-1].  *See Wyser-Pratte Mgmt.*, 413 F.3d at 560.[2]

**B.      Claim against WBIR and Tegna**

WBIR and Tegna argue that the Court should dismiss plaintiff's amended complaint on two grounds: (1) the news article is protected by the fair report privilege; and (2) the news article is substantially true [Doc. 9, pp. 9–18].

First, WBIR and Tegna state that the fair report privilege protects them from liability for reports of official proceedings if the report is "a fair and accurate summation of the proceedings" [*Id.* at 10 (citing *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 284–85 (Tenn. Ct. App. 2007))].  They assert that the D.C. District Court, in which plaintiff was charged, regularly refers to the events that occurred at the United States Capitol on January 6 as an "insurrection," and describes the charges, including those for which plaintiff was indicted, as charges arising from the "January 6, 2021, insurrection" [*Id.* at 11].  WBIR and Tegna assert that plaintiff's reference to the news article's original URL containing "shannon-bitzer-facing-january-6-insurrection-charges" is misplaced, as the "statement" in the URL is not part of the news article, and, even if it was, it "fairly and accurately reports the contents of" public records of criminal proceedings [*Id.* at 13–14].  Lastly, WBIR and Tegna argue that the news article must be read in its entirety, and the URL is fair and accurate when viewed in context [*Id.* at 14].

---

[2] Plaintiff also attaches an 86-page document to his response [Doc. 10-1].  However, this document appears to relate to plaintiff's claim for damages.  Because damages are not at issue with respect to this motion, the Court finds it unnecessary to consider this document.

Second, WBIR and Tegna contend that the news article is, at a minimum, substantially true [*Id.*]. The article did not state that plaintiff was charged with the specific charge of "insurrection," but rather, accurately reported that plaintiff was criminally charged for engaging in certain alleged conduct during the January 6 insurrection [*Id.* at 15]. Moreover, the URL did not state that plaintiff was charged with insurrection or seditious conspiracy, and the reference to the January 6 insurrection was consistent with how the district court in which plaintiff was charged referred to such [*Id.* at 16].

Plaintiff responds that the "defenses of fair report privilege and substantial truth do not apply as a matter of law at this stage" [Doc. 10, p. 1]. He contends that defendants "pushed a false narrative that January 6, 2021, was an 'insurrection'" [*Id.*]. Plaintiff asserts that all charges against him were dismissed "as baseless" on February 17, 2025 [*Id.* at 3].[3] Further, he contends that there is no proof of assaults or violence as these charges were "fabricated" [*Id.*]. Plaintiff alleges that "the 'insurrection' frame is media-constructed, not fact, as no § 2383 charges exist" [*Id.* at 4]. Plaintiff contends that the fair report privilege only applies if the report is substantially true and fair, but the article "invented 'insurrection charges,' which were not in any official record or proceeding" which "is not a 'fair' report; it's a fabrication" [*Id.*]. Finally, plaintiff argues that the substantial truth doctrine does not apply because the article labeled his charges as "insurrection charges" which implies

_____

[3] The Court notes that, contrary to this assertion, the criminal charges against plaintiff were actually dismissed upon the motion of the government on January 21, 2025, based on the Executive Order dated January 20, 2025, Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021 [D.D.C. CM/ECF, Case No. 1:24-cr-316, Doc. 35].

treasonous intent "far more damaging than the actual misdemeanors (upgraded to felonies) dismissed as baseless" [*Id.* at 5]. Plaintiff concludes that "[t]he 'insurrection' frame is media invention, not truth" [*Id.*].

In reply, WBIR and Tegna argue that plaintiff misstates the law regarding: (1) the applicable standard for the fair report privilege; (2) the applicable standard for the substantial truth doctrine; and (3) the propriety of granting a Rule 12 motion based on either defense [Doc. 11, p. 3]. They reiterate that the article does not state that plaintiff was charged with "insurrection" and, even if it did, this would be substantially true [*Id.* at 3–4].

"To state a defamation claim under Tennessee law, a plaintiff must allege that '(1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.'" *Clayton v. Hogan*, 753 F. Supp. 3d 629, 637 (M.D. Tenn. 2024) (quoting *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999)).

In Tennessee, the fair report privilege is an exception to liability for defamation. *Id.* at 638. Tennessee's fair report privilege "protects media outlets that 'make reports of [official] proceedings to the public, in order that members of the public may be apprised of what takes place in the proceedings without having been present.'" *Id.* (quoting *Smith v. Reed*, 944 S.W.2d 623, 625 (Tenn. Ct. App. 1996)). To be subject to the fair report privilege, a statement must be "a fair and accurate summation of the proceeding . . . ." *Id.* (citation omitted) (internal quotation marks omitted). However, the report does not have to be verbatim "as long as it conveys a correct and just impression of what took place." *Id.*

9

(citations omitted); *see also Milligan v. United States*, 670 F.3d 686, 697 (6th Cir. 2012) ("Minor, insignificant factual discrepancies will not overcome the fair report privilege[.]"). Moreover, the "[t]he accuracy of [a] report should be assessed on the publication as a whole, not isolated portions of it[.]" *Clayton*, 753 F. Supp. 3d at 640 (quoting *Karedes v. Ackerly Grp., Inc.*, 423 F.3d 107, 114 (2d Cir. 2005)); *see also Schuchardt v. Bloomberg L.P.*, No. No. 3:22-CV-1017, 2024 WL 1144226, at *16 (M.D. Tenn. Mar. 15, 2024) (noting that a headline must be considered in the context of the article as a whole).

Moreover, because falsity is an element of defamation, "the defense of truth applies so long as the 'sting' (or injurious part) of the statement is true." *Ali*, 984 S.W.2d at 229 (quoting *Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719–20 (Tenn. Ct. App. 1983)). "Truth is an absolute defense 'when the defamatory meaning conveyed by the words is true.'" *Isbell v. Travis Elec. Co.*, No. M1999-52-COA-R3-CV, 2000 WL 1817252, at *5 (Tenn. Ct. App. Dec. 13, 2000) (quoting *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978)). "[I]t is sufficient to show that the imputation [of a statement] is substantially true, or, as it is often put, the justify the 'gist,' the 'sting,' or the 'substantial truth' of the defamation." *Id.* (quoting *Stones River*, 651 S.W.2d at 719–20).

While WBIR and Tegna's two defenses, that is, the fair report privilege and the substantial truth defense, have slightly different analyses (e.g., whether the report is "fair and accurate" versus whether the statement is "substantially true"), in this case, those analyses boil down to a single question: are the statements in the news article about the criminal charges against plaintiff an accurate statement of those charges. Before delving

10

into that matter, the Court notes that plaintiff appears, at least in part, to argue about the validity of the criminal charges he faced [*See* Doc. 10, pp. 2–3] (referring to "baseless charges" and suggesting that charges alleging "assaults or violence" were "fabricated"). But that is not the question before this Court. The question is whether the article at issue accurately reported what the criminal charges were; whether or not the criminal charges had a sufficient factual basis is irrelevant to the instant inquiry.

Turning to the truth or accuracy of the article, the Court notes that plaintiff appears to essentially raise two challenges to the article: (1) that he was not charged with an "insurrection" charge; and (2) that the events at the United States Capitol on January 6, 2021, were not an "insurrection" [*See* Doc. 10].

As to the first of these arguments, there can be no doubt that the article is at least "substantially" true and accurate. *See Isbell*, 2000 WL 1817252, at *5. The article's headline reads "Tennessee man to face several charges, including engaging in physical violence, during Jan. 6 Insurrection" [Doc. 8-1, p. 1]. The article further states, in full:

> A Tennessee man is facing several charges after authorities said he joined in the Jan. 6 Insurrection in Washington D.C. Documents from the Federal Bureau of Investigation said he illegally entered the U.S. Capitol building and joined in a fight against police officers after being pushed out. The documents also said Shannon Bitzer threw a metal crowd control device at police officers.
>
> Bitzer was charged with using a weapon to forcibly oppose resist, impede, intimidate or interfere with officers. He was also charged with illegally entering a restricted building, yelling threatening language in the Capitol Building, and engaging in an act of physical violence during the Jan. 6 Insurrection.
>
> FBI documents said the bureau received a tip from a person who knew Bitzer, saying that he had participated in the Jan. 6 Insurrection. The FBI also said it

11

received an anonymous letter identifying him. The letter included a picture of him at the Jan. 6 Insurrection. That picture was compared to Bitzer's photograph for his Tennessee license, the FBI said.

The FBI then found Bitzer's phone connected to a cell site that provides service to the U.S. Capitol Building on Jan. 6, 2021. The documents also said he was seen multiple times on security footage, open-source video, and police bodycam footage wearing a red "Make America Great Again" hat with a black bandana, a green shirt, blue pants, tan shoes, and a black coat.

The documents also said his bank statements had several charges between Jan. 6, 2021, and Jan. 8, 2021, from the Washington D.C. area.

The FBI said at around 3:10 p.m., Bitzer approached a railing that barricaded the front of the U.S. Capitol building's north doors while other people discussed entering the building with two police officers. It said the police officers would not let them inside.

"Bitzer then moved the barrier out of the way and approached the USCP officers at the North Door. Bitzer yelled, 'We want to go in the Capitol! We want to go in!' As other rioters chanted, 'Let us in, let us in,' Bitzer approached the North Door, which another rioter had just opened," the FBI documents said.

It said he held the north door open, blocking an officer with his arm and waving others inside. It said he yelled, "Get in patriots, get in!" Around a minute later, the documents said he entered the building while holding a cell phone.

The FBI documents said officers also identified Bitzer as having encouraged people to illegally enter the U.S. Capitol building.

After another minute, the documents said he left the building when police officers pushed the crowd out of the Capitol building. After being pushed out, the documents said people in the crowd began fighting police officers.

The FBI said bodycam footage showed a metal stanchion and railing nearby. Other footage showed Bitzer near the railing and stanchion. Bitzer then joined in the fight against police officers, the documents said.

It said Bitzer pushed the railing towards the north door as police officers tried to get inside and close the doors. The FBI said Bitzer also threw the stanchion towards the north doors and the officers in the doorway.

12

According to court records, he was indicted in July 2024 a [sic] notice of hearing was set for Bitzer's arrangement [sic] on Aug. 7.

[Doc. 8-1, pp. 1–4].

Clearly, the article does not claim that plaintiff faced "insurrection charges," but rather it reports that plaintiff faced charges due to his participation in the events at the United States Capitol on January 6, which it refers to as the "Jan. 6 Insurrection" [*See id.*]. Although not reflected in the attached news article, WBIR and Tegna acknowledge that the article's original URL contained: "shannon-bitzer-facing-january-6-insurrection-charges" [Doc. 9, p. 13]. But even assuming that the URL of the website containing the news article could be deemed part of the article itself, this series of words does not necessarily reflect a statement that plaintiff was facing a criminal charge of insurrection, but rather, is equally plausibly read as stating that plaintiff was facing charges relating to the January 6 insurrection. And, that the latter was the intended meaning is made clear when the URL is read in the context of the article, which, again, never stated that plaintiff faced a charge of "insurrection." *See Clayton*, 753 F. Supp. 3d at 640 (concluding that even if the title of a report was "unfair and/or inaccurate in isolation, it was only one sentence connected to an actual reported news story that provided context and detail[.]"). Accordingly, the Court finds that no portion of the article or the URL contained an inaccurate or untrue statement that plaintiff was charged with a criminal charge of "insurrection."

The Court turns to plaintiff's argument that the events at the United States Capitol on January 6, 2021, were not an "insurrection." Although there is no reference in plaintiff's criminal case, which was in its infancy when dismissed, to the term "insurrection, *see*

13

D.D.C. CM/ECF, Case No. 1:24-cr-316, in numerous other cases, the D.C. District Court has routinely described the events at the United States Capitol on January 6 as the "January 6, 2021, insurrection." *See e.g.*, *United States v. Harrington*, No. 23-298, 2024 WL 3443767, at *1 (D.D.C. July 16, 2024) ("[defendant] is charged with eight counts for his alleged participation in the January 6, 2021, insurrection at the U.S. Capitol."); *United States v. Vaglica*, No. 23-429, 2024 WL 4164691, at *1 (D.D.C. Sept. 12, 2024) ("[defendant] is one of hundreds of individuals charged with federal crimes for alleged conduct during the insurrection at the United States Capitol on January 6, 2021."); *United States v. Crawford*, No. 23-426, 2024 WL 1908799, at *1 (D.D.C. May 1, 2024) ("[defendant] participated in the insurrection at the U.S. Capitol on January 6, 2021."); *United States v. Ballenger*, --- F. Supp. 3d ---, 2025 WL 3467569, at *1 (D.D.C. Dec. 3, 2025) ("[defendant] . . . joined the insurrection at the U.S. Capitol on January 6, 2021."). Indeed, in one such case, the defendant sought to prevent the government from using "inflammatory language" including "insurrection" in her criminal trial related to her involvement in the events of January 6, 2021. *United States v. Carpenter*, No. 21-305, 2023 WL 1860978, at *4 (D.D.C. Feb. 9, 2023). The D.C. District Court denied that motion, stating that "[w]hat occurred on January 6 was in fact a riot and an insurrection[.]" *Id.*

Additionally, other courts have also used the term "insurrection" to describe the events of January 6. *See Brush v. Grosse Pointe Pub. Sch. Sys.*, No. 24-11495, 2026 WL 293326, at *2 (E.D. Mich. Feb. 4, 2026) ("[defendant] attended the January 6th insurrection at the U.S. Capitol"); *Lewis v. Abramson*, 672 F. Supp. 3d 72, 93 (D.N.H. 2023) (repeatedly referring to January 6 as an "insurrection"); *Brody v. Fox Broadcasting Co., LLC*, No.

14

22cv6249, 2023 WL 2758730, at *1 (S.D.N.Y. Apr. 3, 2023) ("Plaintiff owns a copyright in a motion picture that she filmed during the January 6, 2021 insurrection at the U.S. Capitol" and "the Government filed a criminal complaint charging Meggs with various federal offenses in connection with the insurrection"); *Demos v. Trump*, 1:24-cv-6, 2024 WL 6845342, at *1 (D.N.D. Mar. 26, 2024) ("The Plaintiff seeks to sue former president, Donald Trump, for alleged violations . . . arising out of the January 6, 2020 [sic], capitol insurrection in Washington, D.C.").

Against this background, the Court finds that the news article's use of that term was both "fair and accurate" and "substantially true," in that the article was summarizing the criminal charges plaintiff faced in the D.C. District Court, and the D.C. District Court, and other courts, had repeatedly labeled those events an "insurrection." In other words, the news article, which reported on the criminal charges from the D.C. District Court, adopted the "insurrection" label that court had repeatedly used for the same course of events as at issue in plaintiff's criminal case. Accordingly, the Court finds that the article's labeling of the events is both protected by the fair report privilege and is unactionable because it is substantially true.

The Court concludes with one final note about the truth and accuracy of the news article, and plaintiff's version of events. Plaintiff repeatedly alleges that he was "acquitted" of charges and that the criminal charges against him were dismissed as "baseless" [*See* Doc. 1-1, Doc. 10]. The record of plaintiff's criminal case in the D.C. District Court does not support those allegations. Plaintiff was indicted in that case on July 3, 2024 [D.D.C. CM/ECF, Case No. 1:24-cv-316, Doc. 20]. Plaintiff was scheduled to proceed to trial on

15

those charges on March 3, 2025 [*See* D.D.C. CM/ECF, Case No. 1:24-cv-316, Minute Order dated Dec. 16, 2024]. However, on January 20, 2025, upon his inauguration for his second term, President Donald J. Trump issued a proclamation entitled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021." 90 Fed. Reg. 8331 (Jan. 20, 2025). Citing his constitutional pardon power,[4] the President "grant[ed] a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." *Id*. Additionally, the President directed the United States Attorney General to "administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above" and "pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." *Id*. As a result, on January 21, 2025, the government moved to dismiss the charges against plaintiff in the D.C. District Court, which was granted [D.D.C. CM/ECF, Case No. 1:24-cr-316, Doc. 35, Minute Order dated Feb. 17, 2025]. As this Court has previously stated, "President Trump unquestionably has the authority to pardon [a defendant] for all of his convictions" and "this power is [the president's] alone to exercise as he sees fit, within the bounds of the Constitution." *United States v. Meteer*, No. 3:22-cr-67, 2025 WL 1618815, at \*2 (E.D. Tenn. June 6, 2025) (internal quotation marks omitted). But a dismissal of charges based on a presidential pardon is not, as plaintiff claims, an "acquittal"

---

[4] "[The President] shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1.

and is not a dismissal on the ground that the charges are "baseless" [*See* Doc. 1-1, Doc. 10].

Accordingly, any allegation that the new article's recitation of the charges in this case is defamatory because plaintiff was "acquitted" or the charges against him "dismissed as baseless" are meritless.

For all these reasons, plaintiff's defamation claim against WBIR and Tegna is **DISMISSED.**

### C. Claim against Jane/John Doe

Finally, the Court will *sua sponte* address the remaining claim against Journalist Jane/John Doe, who has not filed any dispositive motions or otherwise appeared in the action. Under Tennessee law, "the statute of limitations for libel—that is, published defamation—is one year[.]" *Clayton*, 753 F. Supp. 3d at 636 (citing Tenn. Code Ann. § 28-3-104(a)(1)(A)). In this case, the news article was published on August 5, 2024, and plaintiff initiated this lawsuit within one year, on June 9, 2025 [*See* Docs. 1-1, 8-1].

The statute of limitations expired on August 5, 2025; however, plaintiff has not attempted to amend his complaint to name the Jane/John Doe defendant [*See* Doc. 1-1]. *See Cross v. City of Detroit*, No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008) (dismissing plaintiff's claim against John Doe police officer *sua sponte* and with prejudice because plaintiff "did not seek leave to amend the complaint to name the John Doe defendant prior to the expiration of the statute of limitations"); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir.2012) (holding that Rule 15(c) of the Federal Rules of Civil Procedure offers no remedy when plaintiff "simply did not know whom to sue or opted not to find out within the limitations period" and "waited until the last day of the . . . limitations

period to file his complaint, [which] left no time to discover the identity of his arresting officers within the relevant time" and noting that Rule 15(c) "allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe'"). Accordingly, plaintiff's defamation claim against Jane/John Doe is also **DISMISSED.**

## IV. CONCLUSION

For the reasons above, the motion to dismiss [Doc. 8] will be **GRANTED.** This case will be **DISMISSED.** A separate order will follow.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

18